UNSECURED CREDITORS' COMMIT-
TEE; Leon A. Uziel,
Creditors–Appellants,

v.

PUGET SOUND PLYWOOD, INC., fdba
Soundbilt Plywood Sales, Debtor,

and

Puget Sound Plywood, Inc.,
Debtor–Appellee.

No. 90–35296.

United States Court of Appeals,
Ninth Circuit.

Submitted November 8, 1990.*

Decided Jan. 31, 1991.

---

* The panel finds this case appropriate for submis-
sion without oral argument pursuant to Ninth

Circuit Rule 34–4 and Fed.R.App.P. 34(a).

956

Marc S. Stern, Seattle, Wash., for creditors-appellants.

Edwin K. Sato, Shulkin, Hutton & Bucknell, Seattle, Wash., for debtor-appellee.

Before FLETCHER, FARRIS and BOOCHEVER, Circuit Judges.

BOOCHEVER, Circuit Judge:

Leon A. Uziel, attorney for the Unsecured Creditors' Committee (Committee) in Puget Sound Plywood's (PSP) Chapter 11 case, appeals the district court's affirmance of the bankruptcy court's order of attorneys' fees. The bankruptcy court awarded Uziel $7,172.63 of the $21,465.00 requested in his fifth fee application. We affirm.

## BACKGROUND

On October 20, 1988, Uziel, counsel for the Committee since April 1985, filed his fifth fee application with the bankruptcy court. He requested $21,465.00 in fees and $1,099.34 in costs for work completed during the period of October 1, 1987 through September 6, 1988. Specifically, he charged 139.1 hours of legal services at $150/hour and 12 hours of paraprofessional services at $50/hour. Most of the requested fees related to work on the Committee's objection to $120,000 in attorneys' fees received by Chase Commercial Corporation (Chase), a secured creditor (Uziel did

not note the exact number of hours, however). The remainder of Uziel's fees related to two other matters, defense of his fourth fee application and postconfirmation transactions between the Committee and PSP. PSP filed an objection to Uziel's application arguing that Uziel spent an inordinate amount of time on the Chase matter, characterized by PSP as a "highly contingent objection." PSP noted that Uziel had already been paid for 44.9 hours of work on the Chase matter pursuant to his fourth fee application. The bankruptcy court held a hearing on November 29, 1988[1] and took the matter under advisement.

Meanwhile, in January 1989, apparently as a result of Uziel's intervention on behalf of PSP, the bankruptcy court ordered Chase to disgorge $18,517.90. Two months later, on March 10, 1989, the bankruptcy court ruled on Uziel's fee application. The court determined that Uziel was entitled to $6,172.63, one-third of the Chase recovery; an additional $1,000 (8 hours at a rate of $125/hour) for the other two categories of legal services; and, the entire $1,099.24 requested for costs. On appeal, the district court affirmed. Uziel timely appealed to this court. Uziel requests that we reverse and remand to the bankruptcy court to refigure Uziel's fee based on an hourly formula. We have jurisdiction pursuant to 28 U.S.C.A. § 158(d) (West Supp.1990).

## DISCUSSION

A bankruptcy court's award of fees "will be upheld unless the awarding court abused its discretion or erroneously applied the law. The bankruptcy court's findings of fact are binding on the district court and this court unless clearly erroneous." *Southwestern Media, Inc. v. Rau,* 708 F.2d 419, 422 (9th Cir.1983) (citations omitted).

The applicable law in this case is 11 U.S.C.A. § 330 (West Supp.1990), which provides in relevant part:

(a) After notice to any parties in interest and to the United States trustee and a hearing, ... the court may award ... to a professional person employed under section ... 1103 of this title, ...

(1) reasonable compensation for actual, necessary services rendered by such ... professional person, ... and by any paraprofessional persons employed by such ... professional person ... based on the nature, the extent, and the value of such services, the time spent on such services and the cost of comparable services other than in a case under this title; and

(2) reimbursement for actual, necessary expenses.

Based on this statute, adopting the framework set forth in *In re Wildman,* 72 B.R. 700, 704–05 (N.D.Ill.1987), the bankruptcy court employed a tripartite analysis in its review of Uziel's application:

(1) Are the services which are the subject of the application properly compensable as legal services?

(2) If so, were they necessary and is the performance of necessary tasks adequately documented?

---

1. In his brief, Uziel incorrectly claims two hearings were held, one on November 4, 1988 and the other on November 29, 1988. According to the bankruptcy court docket sheet, no hearing was held on November 4, 1988. Moreover, in its order, the bankruptcy court states that "the matter came on for hearing ... on November 29, 1988." A November 4, 1988 hearing is not mentioned. Two hearings were held, however, in connection with Uziel's *fourth* fee application—one on November 4, 1987.

In addition to the mention in his Opening Brief, Uziel included a transcript of the November 4, 1987 hearing in his Excerpts of Record and penned in the date "1988" next to the typewritten date of "1987". In the Excerpts index, next to the listing for the 1987 transcript, Uziel noted that "the correct date should be November 4, 1988." It appears, therefore, that Uziel mistakenly believes and misrepresents that two hearings were held in November 1988.

This error is important because Uziel attempts to rely in his Reply Brief on a statement purportedly made at the nonexistent November 4, 1988 hearing. Specifically, he quotes from the 1987 transcript asserting that "the debtor, in open court, accepted the number of hours, the hourly rate requested and their reasonableness." Consequently, PSP filed a Motion to Strike Erroneous Factual Allegations requesting the panel to strike from Uziel's brief those statements and any arguments flowing from them. We disregarded those statements in deciding this case.

(3) If so, how will they be valued? Were the necessary tasks performed within a reasonable amount of time and what is the reasonable value of that time?

The bankruptcy court determined that all of Uziel's work was compensable, but his work on the Chase matter failed the second "actual and necessary" prong, while his work on the other two matters failed the third "reasonableness" prong.

## I. Compensable

■ Uziel argues that by finding his work compensable, the bankruptcy court necessarily found it to be necessary and reasonable. We disagree. A finding of compensability merely means the services performed were properly charged as legal services, as opposed to administrative or otherwise nonlegal services. To receive all of his requested fees, Uziel still needed to demonstrate that his work was necessary and reasonable. Having found that the work was compensable, the court properly proceeded to inquire whether the work was necessary and reasonable.

## II. Actual and Necessary

■ With respect to the Chase matter, the bankruptcy court stated:

Having found all services compensable, the next step is to determine whether or not those services were "actual and necessary."

It is in this area [objection to Chase fees] that the court encounters difficulty.... The debtor had actively questioned the need for such a challenge and refused to participate on its own behalf. *While the court finds that there was some justification for Mr. Uziel's labors, the court must seriously question the extent of these labors, particularly in view of the final benefit to the estate.* Although the court found partially in favor of the Unsecured Creditors' Claim against Chase, the court's decision was not anywhere close to the position which had been taken by Mr. Uziel.

In these circumstances, rather than awarding fees calculated on an hourly basis, the court finds that the more cor-

rect method for awarding fees would be on a contingent basis. A reasonable sum for the contingency fee would be ⅓ of the amount by which Chase's attorneys' fees were ultimately reduced.

(Emphasis added).

Uziel challenges two aspects of the Chase portion of the fee award. First, he attacks the court's decision that his Chase work failed the "actual and necessary" test. Second, he challenges the method used by the bankruptcy court to calculate a reasonable fee. As a preliminary matter, however, Uziel suggests the court should not have considered the outcome of the Chase objection because it was still pending at the time of his application hearing, or, at the very least, should have given him an opportunity to respond. Uziel cites no authority supporting this contention. Further, he knew at the fee hearing that the outcome of the Chase matter was relevant to his application. PSP argued in its objection that "Uziel's fees should only be recoverable from any gross recovery he makes against Chase Commercial Corporation." Moreover, nothing prevented Uziel from submitting a supplemental brief to the bankruptcy court after the resolution of the Chase matter and before the court's decision on his fee application. Finally, Uziel does not elaborate on what his response would have been, nor what difference a supplemental hearing would have made. The court's failure to hold a supplemental hearing *sua sponte* was not an abuse of discretion.

### A. Bankruptcy court's evaluation of Uziel's Chase work

■ Uziel argues the result of the Chase matter was irrelevant because when the court authorized the Committee to intervene on behalf of the debtor, it was aware that no reduction might occur. The bankruptcy court's intervention order, however, did not give Uziel free reign to run up a tab without considering the maximum probable recovery. On the contrary, prior to working on the Chase objection, Uziel was obligated to consider:

(a) Is the burden of the probable cost of legal services disproportionately large in relation to the size of the estate and maximum probable recovery?

(b) To what extent will the estate suffer if the services are not rendered?

(c) To what extent may the estate benefit if the services are rendered and what is the likelihood of the disputed issues being resolved successfully?

*Wildman*, 72 B.R. at 707. The court's intervention order did not relieve Uziel of his obligation to exercise billing judgment. *See In re Great Sweats*, 113 B.R. 240, 242–44 (E.D.Va.1990) (discussion of "reasonable billing judgment").

■ Uziel implies that because the possible recovery exceeded $120,000, his fee was not unreasonable. Yet Uziel knew that $120,000 was not a probable recovery. At the November 29, 1988 hearing, PSP's general manager related the gist of several conversations he had with the Committee's chairperson and Uziel. Apparently, the general manager advised the Committee that pursuing the Chase matter "didn't appear to ... [be] a very good risk-reward situation and that there was a high chance that the legal fees would more than exceed any possible recovery and that [PSP] didn't think [it] ought to throw good money after bad." PSP offered to agree that any net recovery from Chase would be paid directly to the Committee. Consequently, PSP took the position that Uziel's fees on the Chase matter were "not properly chargeable to the estate."

Chase's underlying agreement provided for allowance of reasonable attorneys' fees. The bankruptcy court recognized that allowance of a fee was mandated in its order requiring Chase to refund $18,517.90 to the estate. The court stated, "when fees are provided in the underlying agreement, and when the creditor is oversecured, allowance of the attorney fees is mandatory. This allowance, however, is limited by the rea-

sonableness requirement in § 506(b)."[2] *See In re Le Marquis Associates*, 81 B.R. 576, 578 (9th Cir.BAP 1987). A reasonable attorney would have been aware that an allowance of attorneys' fees to Chase was mandatory and, therefore, that there was no probability of recovering the full $120,000. Realizing this, Uziel should have analyzed the necessity of his work accordingly.

Analogizing to constitutional rights cases, Uziel's final argument is that irrespective of the ultimate recovery from Chase, important rights were vindicated by the Committee's objection. Therefore, he implies that all of his work was necessary. Uziel relies on *Riverside v. Rivera*, 477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986), where the underlying claim was only $33,350, but the Court upheld an award of $245,456.25 in attorneys' fees and costs. *Riverside*, however, is not controlling. In that case, eight Chicano individuals brought a § 1983 action against Riverside police officers for unjustifiably mistreating them during the break-up of a party and for arresting four of them without probable cause. Uziel's "vindication" of the rights of creditors hardly rises to the same level of importance as the vindication of the rights of the plaintiffs in *Riverside*. In sum, we conclude that the bankruptcy court's finding that some of Uziel's work on the Chase matter was unnecessary was not clearly erroneous.

### B. *Bankruptcy Court's method of calculating alternative award*

■ Uziel asserts the court should have redetermined his fee by calculating the "lodestar" rather than using the Chase recovery as its benchmark even if his work failed the "actual and necessary" prong. He argues he was hired on an hourly basis approved by the court. Further, he implies that he had some expectation of an award

---

**2.** 11 U.S.C.A. § 506(b) (West Supp.1990) provides:

To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

based on an hourly rate due to his previous fee applications.

■ Uziel was hired to represent the Unsecured Creditors' Committee pursuant to 11 U.S.C.A. § 1103(a) (West 1979), which authorizes "the employment by such committee of one or more attorneys, accountants, or other agents, to represent or perform services for such committee." Section 1103 does not guarantee that such hired professionals will be paid at an hourly rate, nor did the court's order approving Uziel's hiring guarantee a particular fee arrangement. Uziel argues that he had an agreement but does not provide this court with a copy of such agreement, nor evidence that the bankruptcy court approved it. Indeed, PSP claims "no specific compensation terms were ordered." Thus, if any agreement existed, it was between the parties and therefore was subject to the court's independent § 330 review, *i.e.*, the *Wildman* three-part test discussed earlier.

Uziel erroneously relies on 11 U.S.C.A. § 328(a) (West Supp.1990) to support his argument that the bankruptcy court erred in refiguring his fees. Section 328(a) provides:

> [A] committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section ... 1103 of this title ... on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingent fee basis. Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.

Because there is no evidence that the court approved Uziel's fee arrangement, § 328 is not applicable. That section only applies where the court has validated a previous fee arrangement and later seeks to change it. *In re Benassi*, 72 B.R. 44, 47 (D.Minn.

1987). Here, where there is no such prior approval, the court may review Uziel's fee application under § 330. *See In re C & P Auto Transport, Inc.*, 94 B.R. 682, 685 & 686 n. 5 (E.D.Cal.1988).

■ Moreover, even if the bankruptcy court approved an hourly rate, if it did not fix the number of allowed hours, that matter still would be subject to the court's review. *In re Confections by Sandra, Inc.*, 83 B.R. 729, 733 (9th Cir. BAP 1987). Finally, Uziel offers no support for the assertion that the court was bound by its treatment of his previous applications.

Notwithstanding the alleged agreement and the court's treatment of Uziel's previous applications, Uziel argues that courts must always start with the "lodestar," multiplying a reasonable number of hours by a reasonable hourly rate, citing *In re Manoa Finance Co.*, 853 F.2d 687 (9th Cir.1988). Uziel also argues that fee shifting cases, in which courts start with the "lodestar", are binding in the bankruptcy context. Although *Manoa* suggests that starting with the "lodestar" is customary, it does not mandate such an approach in all cases. Moreover, *In re Yermakov*, 718 F.2d 1465, 1471 (9th Cir.1983), states that calculating the "lodestar" is the "primary" method for calculating fees; "primary" is not a synonym for "exclusive." Fee shifting cases are persuasive, but due to the uniqueness of bankruptcy proceedings, they are not controlling.

In addition, PSP counters that here "the court could not realistically quantify to numerical precision ... the lodestar calculation." *See Great Sweats*, 113 B.R. at 244. Indeed, the bankruptcy court found that Uziel's application was difficult to interpret. "Because the application contains numerous entries which lump together services relating to varying matters, the court is unable to delineate the specific times spent on specific tasks." While Uziel submitted a comprehensive statement, it is difficult to sort out the work performed on the three categories for which he seeks compensation. Uziel thus failed to supply the bankruptcy court with a sufficiently detailed application. *Cf. In re Nucorp En-*

*ergy, Inc.,* 764 F.2d 655, 658 (9th Cir.1985) (debtors' counsel must maintain and present detailed accountings of services rendered to bankruptcy estate to recover attorneys' fees). Under these circumstances, the district court did not abuse its discretion in employing an alternative formula. *See In re WHET, Inc.,* 62 B.R. 770, 777–78 (D.Mass.1986).

While Uziel is correct that the recovery amount "should not be the benchmark by which compensation is ... measured" in *all* cases, if a fee application is inadequate, the court should not be forced to wade through it in order to calculate the "lodestar." Thus, the bankruptcy court did not abuse its discretion by using an alternative fee formula, one-third of the Chase recovery ($6,172.63), as reasonable compensation.

### III. *The Remaining Two Categories of Legal Services*

■ For the remaining two categories, the bankruptcy court stated that Uziel's work was necessary, but it failed the "reasonableness" prong. Uziel requested $150/hour for approximately twenty-five hours of work on his fourth fee application and postconfirmation transactions. The court decided too many hours were devoted to preparing the fourth fee application and reduced to eight the total number of hours chargeable for both categories. Additionally, the court found Uziel's hourly rate of $150, an increase of $25 from previous applications, excessive. Consequently, the court awarded Uziel $1000 based on a $125 hourly rate. Uziel does not focus on this portion of the award in his brief, so it is not clear whether he is even appealing it. Although we are not required to review these categories due to the inadequate briefing, *see Meehan v. County of Los Angeles,* 856 F.2d 102, 105 n. 1 (9th Cir.1988) (issue deemed abandoned due to party's failure to brief it), we find that the bankruptcy court's reduction for these categories was not an abuse of discretion.

### CONCLUSION

Uziel had an obligation to consider the potential for recovery and balance the ef-

fort required against the results that might be achieved. Absent unusual circumstances, an attorney must scale his or her fee at least to the reasonably expected recovery. The bankruptcy court did not abuse its discretion in determining Uziel's fees. Accordingly, the district court's judgment is

AFFIRMED.