In re Robert & Odette VIRISSIMO,
Debtor.

No. BK–S–05–13605–LBR.

United States Bankruptcy Court,
D. Nevada.

Oct. 2, 2006.

Mark B. Segal, Las Vegas, NV, for Debtor.

James Lisowski, Lisowski Law Firm, Las Vegas, NV, for trustee.

### ORDER ON FEES

LINDA B. RIEGLE, Bankruptcy Judge.

James Lisowski is the trustee in this chapter 7 case and his firm, Lisowski Law Firm, Chtd. also serves as attorney for the trustee. The Lisowski firm has filed a fee application requesting $24,835 for attorney's fees and $419.43 as costs. The debtors have objected.[1] The court requested that Lisowski supplement the record by filing his trustee billing statements.[2] The court then issued a tentative ruling, denying the Lisowski firm compensation for certain services that the court determined were trustee duties. The court invited the Lisowski Law Firm, Chtd. to file a brief on the issue of the demarcation between trustee duties and attorney duties.

The firm has filed its brief, but does not argue (or raise) the issue that the court erred in determining what the job of a trustee is, as opposed to that of an attorney. Instead, the firm argues that the attorneys' fees and the trustee's fees combined total less than the maximum statutory rate allowable under § 326, and therefor the trustee was not attempting to effectively circumvent the statutory limits. The Lisowksi firm says that Lisowski would have billed for the services anyway, as trustee, and that it actually saved the estate money because the trustee hourly rate was greater than the attorney rate for many of the services in question.

The court finds the arguments of the Lisowski firm to be unpersuasive. Whether or not Lisowski's trustee fees are below or above the statutory cap is irrelevant to this court's determination of whether Lisowski Law Firm, Chtd. is entitled to attorney fees as counsel for the trustee and whether the requested fees are reasonable. Accordingly, the court hereby allows attorneys' fees of $14,627.50 plus costs of $419.43. The court disallows the remainder of the fees sought by the firm ($10,207.50). Those charges are not compensable as legal services, and should have been performed by Lisowski in his capacity as trustee.

1. The firm argues that the debtors lack standing to object. Regardless of the debtors' standing the bankruptcy court has an independent obligation to evaluate the reasonableness of a fee request. *In re Eliapo*, 298 B.R. 392, 404–05 (9th Cir. BAP 2003).

2. Filed on February 14, 2006 (docket # 119).

 Lisowski, through his law firm Lisowski Law Firm, Chtd., filed a motion to appoint his firm as the trustee's counsel on June 15, 2005, which the court granted. Section 327(d) authorizes a trustee to employ himself as attorney when it is in the best interest of the estate. The roles of trustee and attorney are distinct, however, and 11 U.S.C. § 328(b) prohibits an attorney-trustee from being paid for performing the statutory duties of a trustee. *In re Garcia,* 335 B.R. 717 (9th Cir. BAP 2005). Section 328(b) provides:

> If the court has authorized a trustee to serve as an attorney or accountant for the estate under section 327(d) of this title, the court may allow compensation for the trustee's services as such attorney or accountant only to the extent that the trustee performed services as attorney or accountant for the estate and not for performance of any of the trustee's duties that are generally performed by a trustee without the assistance of an attorney or accountant for the estate.

Allowing a trustee's lawyer to be compensated for the duties of a trustee would render this provision meaningless. *See In re Butterbaugh,* 135 B.R. 507, 510 (Bankr. N.D.Ohio 1991)(attorney compensation for performing trustee duties "violates the Code itself"). The Bankruptcy Code provides separate compensation systems to trustees and their counsel based on their distinct expertise and function in a bankruptcy case. Services that a trustee performs without the aid of counsel are compensable under § 326, while legal services are compensated under § 328, and each fee application must be reviewed on its own merits. If the duties of counsel were identical to those of a trustee, then appointment under § 327(d) would not be in the best interest of the estate.[3] With the benefit of self-retention comes the burden of adhering to the lines of responsibility between the two roles and for charging attorneys' fees only for services that are properly compensable under the Code.

 Trustees are charged with performing the administrative and ministerial duties in a bankruptcy case.[4] The statutory duties of the trustee under 11 U.S.C. § 704[5] are to:

(1) collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest;

(2) be accountable for all property received;

(3) ensure that the debtor shall perform his intention as specified in section 521(2)(B) of this title;

(4) investigate the financial affairs of the debtor;

(5) if a purpose would be served, examine proofs of claims and object to the allowance of any claim that is improper;

---

3. As explained more fully below, the billing statements show a number of instances where the Lisowski as trustee and the Lisowski Law Firm charged for performing the same services. For example, both the law firm and trustee Lisowski charged to review the closing documents on the same property located in Cathedral City, California, both charged to view certain other property owned by the debtors, and both charged to review a title report.

4. *Handbook for Chapter 7 Trustees,* United States Dept. of Justice, Executive Office for the United States Trustee, Chapter 8, ¶ M(5) at p. 8–25 (July 1, 2002)("[t]he law imposes upon the trustee the primary responsibility to administer the estate. . . .")

5. This case was filed on April 25, 2005, which was before the effective date of the revision to § 704 under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA).

(6) if advisable, oppose the discharge of the debtor;

(7) unless the court orders otherwise, furnish such information concerning the estate and the estate's administration as is requested by a party in interest;

(8) if the business of the debtor is authorized to be operated, file with the court, with the United States trustee, and with any governmental unit charged with responsibility for collection or determination of any tax arising out of such operation, periodic reports and summaries of the operation of such business, including a statement of receipts and disbursements, and such other information as the United States trustee or the court requires; and

(9) make a final report and file a final account of the administration of the estate with the court and with the United States trustee.

■ The role of counsel for the trustee, however, is to perform those tasks that require special expertise beyond that expected of an ordinary trustee. *In re Garcia*, 335 B.R. 717, 725 (9th Cir. BAP 2005).[6]

■ The threshold question in distinguishing between these roles is whether the services can be performed legally only with a law license. One court has described the differences in the roles of attorneys and trustees like this:

The purpose of the attorney for the trustee is not to provide assistance to the trustee in the performance of the trustee's statutory duties, ***but to provide assistance with those services the trustee is unable to perform due to the lack of a license to practice law.***

*In re Polk*, 215 B.R. 250, 253 (Bankr. M.D.Fla.1997) (citation omitted)(emphasis added).

■ Courts have developed generalized guidelines to assist trustees who serve as their own counsel in distinguishing between legal services and a trustee's duties. One widely accepted generalization is this one:

In general, professional time is limited to those tasks performed while representing the trustee in the prosecution of contested matters and adversary proceedings, attendance at court hearings in the capacity of attorney or other professional when the trustee has an interest, the preparation of professional related applications, and the performance of other specialized services that cannot be performed practically or lawfully by the trustee without engaging the services of a professional.

*In re Holub*, 129 B.R. 293, 296 (Bankr. M.D.Fla.1991). Under this analysis, the professional skills of an attorney are required when there is an adversary proceeding or a contested motion that requires the trustee to appear and prosecute or defend, when an attorney is needed for a court appearance, or when other services are needed that require a law license.

■ The practice of law in Nevada, at a minimum, involves giving legal advice and exercising legal judgment. *See Pioneer Title Ins. & Trust v. State Bar of Nevada*, 74 Nev. 186, 326 P.2d 408, 411 (1958)(unauthorized practice of law occurs with exercise of legal judgment, advice, guidance and suggestion). Law practice is not limited to conducting litigation, but includes the preparation of documents requiring the use of legal knowledge or skill.

---

**6.** "Reasonable and necessary legal skills are those which require professional legal skills and expertise beyond the knowledge and skills of a trustee." *Handbook for Chapter 7 Trustees*, U.S. Dept. of Justice, Executive Office for the United States Trustees, Chapter 8, ¶ N(3) at p. 8–30 (July 1, 2002).

For example in *Garcia*, the Bankruptcy Appellate Panel ruled that preparing two documents—a stipulation and a mutual release—constituted legal services. Analyzing the definition of "practicing law," the BAP held that under applicable state law it means more than just appearing in court. "[T]he practice of law includes the preparation of legal instruments and contracts by which legal rights are secured, whether the matter is pending in court or not." The complexity of the documents is not the determining factor. *In re Garcia*, 335 B.R. 717, 728 (9th Cir. BAP 2005).

■■■■ A trustee-attorney applicant has the burden of showing that a service "cannot be performed practically or lawfully except by an attorney." *In re Howard Love Pipeline Supply Co.*, 253 B.R. 781, 792 (Bankr.E.D.Tex.2000). Attorneys must therefore present billing records with enough detail to show that the charge involves some legal service beyond the scope of the trustee's statutory duty. *See In re Garcia*, 335 B.R. 717, 727 (9th Cir. BAP 2005). The need for the attorney must be clear from the description of the services in the application. *Id.* The fee applicant has the burden of showing that the requested fees are reasonable. *In re Basham*, 208 B.R. 926, 931–32 (9th Cir. BAP 1997), *aff'd*, 152 F.3d 924 (9th Cir.1998).

■■■ The Ninth Circuit in *Unsecured Creditors' Committee v. Puget Sound Plywood, Inc.*, 924 F.2d 955, 957–58 (9th Cir. 1990) has employed a three-part analysis in reviewing a professional's fee application, which requires a court to ask the following questions:

(1) Are the services which are the subject of the application properly compensable as legal services?

(2) If so, were they necessary and is the performance of necessary tasks adequately documented?

(3) If, so, how will they be valued? Were the necessary tasks performed within a reasonable amount of time and what is the reasonable value of that time?

If the services of the attorney for the trustee are compensable, then the rest of the analysis centers on whether the fees amount to "reasonable compensation for actual, necessary services." 11 U.S.C. 330(a)(1)(A). To determine the amount of reasonable compensation, § 330(a)(3) [7] says that the court must:

[C]onsider the nature, the extent, and the value of such services, taking into account all relevant factors, including—

(A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

(E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

■■■ A professional needs only to show that the services rendered were "reasonably likely" to benefit the estate at the time they were rendered. *In re Garcia*, 335 B.R. 717, 724 (9th Cir. BAP 2005).

---

**7.** This case was filed before the effective date of the revision to § 330 under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA).

■ In addition, a bankruptcy court must examine the circumstances and manner in which the services are performed and the results achieved to determine a reasonable fee. This examination includes:

(a) Were the services authorized?

(b) Were the services necessary or beneficial to the administration of the estate at the time they were rendered?

(c) Are the services adequately documented?

(d) Are the fees required reasonable, taking into consideration the factors set forth in section 330(a)(3)?

(e) In making the determination, the court must consider whether the professional exercised reasonable billing judgment.

*Id.* In exercising reasonable billing judgment, the professional must consider:

(a) Is the burden of the probable cost of legal services disproportionately large in relation to the size of the estate and maximum probable recovery?

(b) To what extent will the estate suffer if the services are not rendered?

(c) To what extent may the estate benefit if the services are rendered and what is the likelihood of the disputed issues being resolved successfully?

*Id.* Section 330(a)(4)(A) provides that a court must not allow compensation for—

(i) unnecessary duplication of services; or

(ii) services that were not—

(I) reasonably likely to benefit the debtor's estate; or

(II) necessary to the administration of the case.

■ The threshold question that underpins all of this analysis is whether the services of the attorney for the trustee are properly compensable as legal services. *Unsecured Creditors' Committee v. Puget Sound Plywood, Inc.,* 924 F.2d 955, 958 (9th Cir.1991). "A finding of compensability merely means the services performed were properly charged as legal services, as opposed to administrative or otherwise nonlegal services." *Id.* Accordingly, before an attorney for the trustee can be compensated, the court must determine whether the services performed by the attorney were legal services, as opposed to the trustee's statutory duties.

A review of the time sheets submitted by Lisowski Law Firm, Chtd. show that many of the tasks that are billed for are not compensable. This is because in many instances the Lisowski firm has billed for services that are the statutory duties of a trustee.

### A. Services That Are Not Compensable

#### 1. Public Record Searches and Other Investigation

■ Lisowski Law Firm, Chtd. bills 12.4 hours and charges $3,410 [8] to research public records, to order deeds from county recorders, to review and seek information about lawsuits already pending against the debtors, and to review closing documents on their realty. This charge includes $110 (.4 hours) to "order deeds from San Diego County recorder;" [9] $687.50 (2.5 hours) to "review file and initiate public records search;" [10] $275 (1 hour) to "research/find deed of sale—San Diego property"; [11] $137.50 (.50 hour) to "research Riverside

---

8. The hourly rates billed in this case by the attorneys in Lisowski Law Firm, Chtd. range from $200 to $295 per hour.

9. June 21, 2005.

10. June 7, 2005.

11. June 20, 2005.

County public records;"[12] and $137.50 to "review transfer records from Riverside + San Diego counties."[13] It also includes $275 (1 hour) to "prepare task list for attorney and investigator;"[14] $192.50 (.7 hours) to review closing documents on the debtors' out-of-state realty;[15] and $1,402.50 (5.1 hours) to either seek information, review, or talk about lawsuits already filed by others against the debtors.[16]

■■■ These tasks are examples of a trustee's statutory duty under § 704(a)(4) to investigate the financial affairs of the debtor. Public records searches are fairly straightforward and the application fails to show that legal analysis was necessary. Similarly, the firm's charges to review the lawsuits lack any description regarding a legal analysis of the issues involved. There is no showing that either the records searches, the deed orders, the communications, or the review of the pending lawsuits presented unique difficulties that required the professional expertise of an attorney. These charges are not sufficiently documented to support a claim for legal services. *See In re Garcia*, 335 B.R. 717, 727 (9th Cir. BAP 2005). One billing entry baldly states "legal research and review outstanding lawsuits."[17] Vague entries and those that lump together different services are not compensable. *In re Ginji Corp.*, 117 B.R. 983, 993 (Bankr. D.Nev.1990).

■■■ Additionally, the billing records of the Lisowski firm and Lisowski as trustee show a duplication of services. This is because both the firm and the trustee have charged to investigate the affairs of the debtor. For example, Lisowski's trustee billing statement for July 7, 2005 has an entry which states in part "review closing docs for Cathedral City property" ($125.00 for .5 hours). The firm's billing records show a charge for the same service. On June 27, 2005, the law firm billed to "review closing docs on S.D. and Cathedral City homes" ($192.50 for .7 hours). This problem of receiving two fees for the same service was expressly acknowledged when Congress enacted § 328(b) and is clearly not in the best interest of the estate.[18] *See* 11 U.S.C. § 330(a)(4)(A)(i)(court must not allow compensation for "unnecessary duplication of services").

### 2. Disposition of Assets

#### a. Valuations and Appraisals

■■■ Arranging for an appraisal or the valuation of a debtor's property is a duty of the trustee. Appraisals are a part of the trustee's duty under §§ 704(1) and (4) to collect and liquidate property of the estate and to investigate the affairs of the debtor. *See In re McKenna*, 93 B.R. 238, 242 (Bankr.E.D.Cal.1988)(arranging for appraisals of the estate and services related the sale of debtor's assets are trustee

---

12. June 8, 2005.

13. June 13, 2005.

14. June 8, 2005.

15. June 27, 2005.

16. June 20–22, 2005.

17. June 20, 2005.

18. Section 328(b) provides that legal fees can be disallowed if an attorney's services dupli-

cate the job of a trustee. As stated earlier, the legislative history states that the purpose of allowing the trustee to serve as his own counsel is to reduce costs and not to permit a trustee "to receive two fees for the same service or avoid the maxima fixed in section 326." House Report on § 328(b), H.R. Rep. No. 95–595, 95th Cong., 1st Sess. 329 (1977), U.S.Code Cong. & Admin.News pp. 5963, 6285.

functions).[19] Despite this, Lisowski Law Firm, Chtd. bills $535 (2 hours) for telephone calls with realtors about appraisals and valuations of the debtors' real property. For example, the law firm bills $137.50 (.50 hours) to call a realtor to "request valuation," [20] and $82.50 (.3 hours) for "telephone call to Diero re: itemized appraisal." [21]

The services of the Lisowski firm duplicated Lisowski's trustee work. In addition to the firm's services as mentioned above, valuation services were also performed by Lisowski as trustee. His trustee billing statement shows that he billed $100 (.4 hours) as trustee for a phone call with a realtor "re: value and time to sell" [22] and that he billed to review the "bluebook values on cars." [23]

There is no showing in the firm's application about why the professional expertise as an attorney was required to either request or discuss appraisals, and no showing of the legal issues that were involved. The charges for the valuation and appraisal-related services that Lisowski Law Firm, Chtd. performed are trustee duties, not attorney duties. Accordingly, they are denied.

### b. Viewing Property

■ The Lisowski firm bills $687.50 (2.5 hours) [24] for time spent "meeting with Diero to view household goods." Viewing a debtor's property, however, is part of a trustee's duty to investigate the affairs of the debtor (§ 704(4)) and to collect and liquidate property of the estate (§ 704(1)). The application is silent as to whether the viewing was done to sell the property, inventory it, or facilitate an appraisal. But in any event, absent a showing of the need for legal services, all of those activities are the duties of a trustee.[25]

Again, the court notes that the law firm's services duplicated Lisowski's trustee work. His trustee billing statements show a charge of $212.50 (2.5 hours) [26] to "locate, drive, view house and vehicles." Two months later, Lisowski Law Firm, Chtd. billed $687.50 (2.5 hours) as attorney for the trustee for "meeting with Diero to view household goods." [27]

The firm's application lacks the detail of what legal issue was involved that required his professional skills as an attorney to simply view the debtors' property. These charges are denied.

### c. Sale Negotiations and Listing Agreement

■ The firm bills $2,570 (11.8 hours) to talk with the realtor and opposing counsel about offers and counter-offers on the debtors' residence, and about closing costs, closing dates, and signatures on the payoff.

19. *See also, Handbook for Chapter 7 Trustees,* United States Dept. of Justice, Executive Office for the United States Trustee, Chapter 8, ¶ M(7) at p. 8–28 (July 1, 2002)("[a] trustee may require the services of an appraiser to ascertain the value of property of an estate.").

20. June 7, 2005.

21. August 18, 2005. The record shows that Robert Diero & Associates is a realty company. *See* "Trustee's Motion to Enter Into Listing Agreement." (Docket # 42).

22. Trustee billing statements on June 7, 2005.

23. Trustee Billing Statements on July 30, 2005.

24. August 17, 2005.

25. *Handbook for Chapter 7 Trustees,* United States Dept. of Justice, Executive Office for the United States Trustee, Chapter 6 ¶ B(1)-(2), pp. 6–2–through 6–4; Chapter 8 ¶ M at p. 8–21 (July 1, 2002).

26. June 14, 2005.

27. August 17, 2005.

The billing entries include "telephone call from Sandy Beard re: offer on house" [28] "phone call from Sandy Beard re: counter-offer on house" [29] and "telephone call from Mark Segal re: possible offers on house." [30] In addition, there are charges of $632.50 (2.3 hours) to communicate with the realtor about the listing agreement on the house.[31]

A comparison of the billing records for Lisowski Law Firm, Chtd. and Lisowski as trustee show that sale-related services were performed by both. For example, as trustee Lisowski billed $100 (.4 hours) on June 24, 2005 to talk with the realtor about a listing. On the same day, the law firm also billed $275 (1 hour) for communications about the listing.[32] And on August 11, 2005 the Lisowski firm and Lisowski as trustee billed to review or talk about a counter-offer on the debtors' house.

■■■ "Routine negotiations regarding the sale of real property are properly within the trustee's province." *In re Garcia*, 335 B.R. 717, 727 (9th Cir. BAP 2005)(communications with broker, reviewing title reports, and negotiating sales are trustee functions). There is no description in the application of what the legal issues were that required the services of an attorney, or why these services were beyond Lisowski's scope of duties as trustee. Absent this detail the services are not compensable.

### d. Reviewing Title Reports

■■■ Lisowski Law Firm, Chtd. charges $495 (2.1 hours) [33] for reviewing a title report and for related telephone calls. The application, however, reveals no legal issue that would require the professional services of an attorney. "With no apparent legal issues present, reviewing the title report is part of the trustee's duties." *Garcia*, 335 B.R. at 727. The court notes, again, that both the firm and Lisowski as trustee billed for viewing title reports. Lisowski charged as trustee to review the title report on the debtors' residence on June 24, 2005 ("review preliminary title report on Riley property").

### 3. Preparing Simple Applications and Motions

### a. Application for Employment of Counsel

■■■ Fifty dollars (.5 hours) is charged to prepare the trustee's application to employ his law firm as counsel for the trustee and to prepare an affidavit.[34] As determined in *In re Garcia*, 335 B.R. at 726, absent a showing by the applicant to the contrary, the preparation of an application for the employment of a professional is a duty generally performed by a trustee without the assistance of an attorney. The firm's application is a little over 2 pages long. The supporting affidavit is two pages and the order is a single paragraph. The application demonstrates no legal is-

28. August 10, 2005. The record shows that Sandy Beard is a realtor. *See* "Trustee's Motion to Enter Into Listing Agreement" filed on July 8, 2005 (Docket # 42).

29. August 11, 2005.

30. August 19, 2005.

31. June 22, 2005; June 24, 2005; June 27, 2005; July 1, 2005; and July 5, 2005.

32. The billing entries state: "telephone call to Sandy Beard re: listing contract;" "phone call w/Sandy Beard re: new Virissimo listing;" and "ltr to Frank Napoli realtor—reject listing contract."

33. June 17, 2005; July 1, 2005; August 24, 2005; September 30, 2005; October 3, 2005; November 23, 2005; and November 28, 2005.

34. June 5, 2005.

sues that required an attorney. "Routine employment applications are generally prepared and presented by a trustee without the assistance of an attorney for the estate." *Id.*

#### b. Application for Rule 2004 Exam

■ Lisowski Law Firm, Chtd. bills $110 (.4 hours) [35] to draft an ex parte application for a 2004 exam to be conducted by the trustee, and a supporting affidavit. The application states "[i]t is necessary for the trustee to examine the custodian of records of Prudential Americana Group regarding the debtors and debtors' assets." The affidavit in support of the application is virtually identical and adds no additional facts. [36] The application and the affidavit are four and five paragraphs long, respectively.

This application, filed ex parte and not opposed, is an example of the trustee's statutory duty to investigate the affairs of the debtor (§ 704(4)) and to collect and liquidate property of the estate (§ 704(1)). Absent a need for complex legal analysis or intricate argument, the filing of a simple motion like this is generally performed by a trustee without the assistance of an attorney. *In re McKenna*, 93 B.R. 238, 241 (Bankr.C.D.Cal.1988)(unopposed motion to sell liquor license is trustee duty). This simple application for a 2004 exam is akin to the trustee's execution of an application to employ himself, which is a trustee job, than it is to the preparation of a legal instrument that secures legal rights, such as a stipulation, which was considered a

legal service in *In re Garcia*, 335 B.R. 717 (9th Cir. BAP 2005). Drafting this application for a 2004 exam does not fall within the *Holub* test, either, as being the prosecution of a contested matter or adversarial proceeding, attendance at a court hearing as an attorney, or as being impossible to perform practically or lawfully without a law license.

The firm's fee application lacks any showing of why the professional skills of an attorney were required to draft this simple, unopposed application, or why drafting the application was beyond the scope of a trustee's duties. Accordingly, this charge is denied.

#### c. Simple Uncontested Motions

Lisowski Law Firm, Chtd. bills $260 to draft a motion for turnover of bank account funds (.8 hours) [37] and for a conference with "Katie" four months later about whether the funds had been received (.2 hours). [38] The debtors did not file a written opposition or appear at the hearing. In fact one of the attorneys in the firm [39] appeared at the hearing and told the court that "I have spoken to Mr. Segal; he is not opposing these motions." [40] There was no argument at the hearing. The motion was a mere two pages plus an exhibit.

The presentation of a simple motion that relates to a trustee duty and that requires no complex legal analysis or argument is generally performed by a trustee without the aid of counsel. *See In re McKenna*, 93 B.R. 238, 241 (Bankr.C.D.Cal.1988)(unopposed motion to sell liquor license). A skeletal, unopposed motion for turnover is

---

**35.** June 23, 2005.

**36.** It states "[i]t has become necessary for the trustee to examine the Custodian of Records of Prudential Americana Group to explore the facts and circumstances surrounding the debtors and potential estate assets."

**37.** June 21, 2005.

**38.** October 21, 2005.

**39.** Donald Norris, Esq.

**40.** The trustee's motion to extend time to file an adversary proceeding was also heard at that time (July 27, 2005).

an example of that kind of motion. This is so because a demand for turnover is a part of the trustee's statutory duty under § 704(1) to collect property of the estate and liquidate it. *See In re Spungen,* 168 B.R. 373, 377–78 (N.D.Ind.1993)(turnover request is trustee duty even if could lead to "full court action").

The fact that documents are simple does not determine whether their drafting "is properly within the sphere of legal services." *In re Garcia,* 335 B.R. 717, 728 (9th Cir. BAP 2005). But Nevada law makes it clear that giving legal advice and exercising legal judgment constitute the practice of law. *Pioneer Title Ins. & Trust v. State Bar of Nevada,* 74 Nev. 186, 326 P.2d 408, 411 (1958). The application and record here show no apparent legal issues present. The need to demand turnover should be known to a competent trustee without seeking legal advice. The turnover motion itself is no more that a recitation of what the trustee told the debtors at the § 341 meeting, which was to turnover their bank funds. After making the demand at the § 341 meeting, any trustee could determine that the funds had not been surrendered. The firm did not have to file an extensive brief, and there was no need for complex legal analysis or intricate argument. An attorney from the firm was not even required to appear in prosecution of the motion because it was unopposed. It therefore does not fall within the *Holub* test as being the prosecution of either a contested matter or adversarial proceeding, attendance at a court hearing as an attorney, or as being impossible to perform without a law license. Furthermore, turnover is pursuant to statute under the Bankruptcy Code, so no legal instruments were required to be drafted in order to secure a legal right as in *Garcia.* While it is true that a motion was drafted to obtain a court order for turnover, the preparation of that motion could be performed both practically and lawfully by the trustee without a law license as it required no complex legal analysis or intricate argument.[41] This unopposed turnover motion is more akin to the simple, uncontested motion to sell that was at issue in *McKenna*[42] and found to be a trustee duty as opposed to the job of an attorney.

This is not to say that the preparation of a simple motion for turnover is *per se* not compensable. Matters that are initially unopposed can turn into contested matters that require legal advice, judgment, or advocacy. But in this case the fee application lacks any detail showing that legal services were required that went beyond the scope of the statutory duty of a trustee. The court therefore concludes this routine, unopposed motion is not compensable. The charge is denied.

---

**41.** The court acknowledges that LR 9014(c)(1) requires that a motion contain a "legal memorandum." This requirement, however, does not mean that trustee Lisowski would have been practicing law if he had prepared the turnover motion. The skeletal motion filed by the firm contained a very brief recitation of the essential facts (debtors were told to turnover the funds at the § 341 meeting but had failed to do so) and a statement that the funds are property of the estate under § 541. Trustees have been charged by Congress with the responsibility of overseeing bankruptcy cases. "Congress obviously took the trustee's qualifications into account when drafting the Bankruptcy Code and contemplated that these highly qualified individuals could and would perform the duties set forth in § 704, *i.e.,* conservation of estate assets for the benefit of creditors." *In re Perkins,* 244 B.R. 835, 844 (Bankr.D.Mont.2000)(trustee filing routine motions that lack legal argument and require no legal expertise does not constitute unauthorized practice of law).

**42.** *In re McKenna,* 93 B.R. 238, 241 (Bankr. C.D.Cal.1988).

### d. Motion to Extend

 Lisowski Law Firm, Chtd. charges $825 for work on what is characterized as motions to extend the time to object to an exemption[43] and to discharge.[44] A review of the docket shows that an extend-time motion to object to the debtor's discharge was filed on July 1, 2005. The court presumes that the $825 bill relates to that motion.[45] The debtors did not file a written opposition to the motion and their counsel made no appearance at the hearing. A lawyer in the attorney-trustee's firm appeared, however, and told the court that the debtors did not oppose the motion. As stated earlier, unopposed motions concerning the duties of a trustee and that require no legal advice, judgment, or argument are generally performed by a trustee without the assistance of an attorney. *See, e.g.; In re Kuhn,* 337 B.R. 668, 676 (Bankr.N.D.Ind.2006)(preparation of motions to extend time to object to discharge and to exemptions is not compensable because both are "ordinary administrative responsibility of a chapter 7 trustee").

Again, the application fails to show what legal services were needed or what issues went beyond the scope of a trustee's statutory duty. The charge is denied.

### 4. Communications Between Information Seekers

 Lisowski Law Firm, Chtd. bills $82.50 (.3 hours)[46] for sending an email to the Department of Justice about "general case status." Routine telephone calls and correspondence with information seekers are the duties of the trustee under § 704(7). *See In re McKenna,* 93 B.R. 238, 242 (Bankr.E.D.Cal.1988).[47] Even if the email was a request by the trustee for information, it is still not compensable as a legal service. Requests for information are part of a trustee's duty under § 704(4) to investigate the affairs of the debtor. The application lacks any detail about what special expertise beyond that of an ordinary trustee was required to send this email. The charge is denied.

### 5. Late–Filed Schedules

 The firm bills $550 (2 hours) for services on the debtors' motion to extend time to file their schedules and statements. The bills are for talking with opposing counsel,[48] and preparing for[49] and attending the hearing.[50] As explained before, filing a simple motion that relates to trustee duty is generally performed by a trustee without the assistance of an attorney if there is no need for complex legal analysis or intricate argument. *In re McKenna,* 93

---

**43.** June 10, 2005; June 13, 2005; and June 15, 2005.

**44.** June 23, 2005.

**45.** The court notes that the charges might apply to services rendered on the debtors' motion to extend the time to file their schedules and statements. The application is not specific enough to determine what motion to extend is at issue. Vague entries are not compensable. *In re Ginji Corp.,* 117 B.R. 983, 993 (Bankr.D.Nev.1990). Nevertheless, as explained below, the firm's charges on the debtors' motion to extend time to file their schedules are also denied.

**46.** June 22, 2005.

**47.** *See Handbook for Chapter 7 Trustees,* United-ed States Dept. of Justice, Executive Office for the United States Trustee, Chapter 8, ¶ M(5) (July 1, 2002)(furnishing information to parties on factual matters is a duty of the trustee).

**48.** July 22, 2005 and July 25, 2005.

**49.** July 25, 2005. This billing entry is non-descriptive as it merely says "prepare for hearings on motions."

**50.** August 10, 2005.

B.R. 238, 241 (Bankr.C.D.Cal.1988). The record shows that the debtors' motion was not opposed. The firm offers no detail in the application about why a lawyer was needed for these services. These charges are denied.

### B. Fees That Are Allowed

#### 1. Objection to Exemption

■ The firm charges $9,282.50 (33.8 hours) for objecting to the debtors' homestead exemption. The application shows that this service relates to issues that required the special expertise of an attorney beyond that expected of an ordinary trustee. Employing counsel was warranted, and the fees are thus compensable. The court also finds that the services were necessary, authorized, and adequately documented. They are also reasonable.

This case presented a novel legal issue related to 11 U.S.C. § 522(p), which was a newly enacted provision of the Bankruptcy Code at the time of filing.[51] The services that were rendered for this issue are related to the § 522(p) issue, and substantial legal research and briefing were required. The court finds that these services were performed within a reasonable amount of time given the nature and importance of the issue. The firm spent 33.8 hours for services related to objecting to the homestead, which included legal research, communications, and the drafting stipulations, briefs, and motions. The court finds this to be reasonable given the complexity of the § 522(p) issue.

As for the rates charged for the work, the court notes that some work was performed at the firm's highest rate ($295).

Much of the work, however, was performed by the firm's second highest-priced attorney ($275) and at the firm's lowest rate ($200). All three rates are reasonable based on the customary compensation charged. Reasonable billing judgment is evident here, given that the more complex homestead may have required the services of a more senior attorney. In addition, a reasonable amount of time was spent.

These services were also necessary and beneficial to the estate and show reasonable billing judgment. The trustee ultimately prevailed on the homestead issue and recovered $90,000, which would not have been obtained without the trustee's efforts. The recovery to the estate outweighs the cost of the services.

#### 2. Motion To Employ Realtor

■ The firm bills $1,705 (6.2 hours)[52] for services related to the employment of a realtor to sell the debtors' homestead. A trustee generally prepares and presents routine employment applications without the assistance of an attorney. In re Garcia, 335 B.R. 717, 725 (9th Cir. BAP 2005)(fees denied for preparing application to hire real estate broker).

The record shows, however, that the motion was opposed. Prosecution of the motion required a written response, a court appearance, and legal argument and advocacy. A written stipulation was also prepared.[53] These are services requiring the special expertise of an attorney, constitute the practice of law, and are thus compensable. They were also necessary and beneficial, adequately documented, authorized, and reasonable as to both the time spent and the fees charged. Reason-

---

**51.** This case was filed on April 25, 2005. The effective date of § 522(p) was April 17, 2005.

**52.** June 24, 2005; June 29, 2005; July 5, 2005; July 7, 2005; July 8, 2005; July 18, 2005; July 21, 2005; and July 26, 2005.

**53.** Trustee's Motion To Enter Into Listing Agreement, Exhibit "1."

able billing judgment was rendered. While none of the work was done at the firm's lowest billing rate ($200), it is reasonable to think that the services of a more senior attorney were required because a stipulation was executed. The amount of time spent was reasonable, and the recovery to the estate is large in comparison to the cost of the services. Accordingly, these charges are allowed.

### 3. Motion To Sell

█ $2,547.50 (12.4 hours) is billed for a motion to sell [54] and to disallow prepayment penalties.[55] The record shows that the motion was not opposed.[56] A simple, uncontested motion to sell in which there is no need for complex legal analysis or intricate argument is generally a trustee duty. See In re McKenna, 93 B.R. 238, 241 (Bankr.E.D.Cal.1988)(motion to sell liquor license).

This motion, however, required legal services in the form of legal analysis, research, preparing a legal brief, and argument because the mortgagee claimed to be owed a pre-payment penalty. The services were necessary and beneficial, authorized, adequately documented, and reasonable both as to time spent and rates charged. Reasonable billing judgment is evident, as the majority of the work was done at the lowest attorney rate in the firm ($200), and the recovery to the estate

outweighs the cost of the service. This charge is allowed.

### 4. Fee Application

█ The $500 (3.0 hours) that has been billed for preparing the application for fees, the task summary, and the court appearance are allowed. The court finds that the time spent and the rates charges were reasonable, and that they were necessary and adequately documented. Fee applications are a compensable task when legal services have been rendered. In re Garcia, 335 B.R. 717, 729 (9th Cir. BAP 2005).

### 5. Other

█ Miscellaneous charges in the total amount of $592.50 are also allowed. These include charges for: (1) communications with opposing counsel about a stipulation for his payment;[57] (2) communications with opposing counsel about requested information and documents;[58] (3) a telephone conference with a court employee;[59] and (4) reviewing the tape of the 341 hearing.[60]

The court awards $419.43 for costs. Even though a substantial portion of the firm's fees have been disallowed because they are not compensable, the court finds that the costs would have been born by Lisowski in his capacity as trustee.[61]

---

54. July 19, 2005; July 26, 2005; October 17, 2005; October 21, 2005; November 4, 2005; November 21, 2005–November 23, 2005; December 14, 2005; December 21, 2005; and December 22, 2005.

55. October 18, 2005–October 20, 2005; and November 21, 2005.

56. The debtors did not file a written opposition, and their counsel appeared at the hearing on December 21, 2005 and stated that "We have no objection to the trustee's request...."

57. December 2, 2005, December 12, 2005, and December 19, 2005.

58. June 9, 2005; June 15, 2005.

59. November 7, 2005.

60. July 25, 2005.

61. The court recognizes that the costs should be billed by the entity that incurred them, that is, Lisowski as trustee or the Lisowski firm. The additional expense that would be incurred by the estate for the firm to separate the costs and bill correctly for them, however, is not cost effective.

Lisowski as trustee may submit the disallowed charges in its request for trustee fees. That request will be reviewed on its own merits.

IT IS SO ORDERED: