**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

In re: MICHELE LYNN MCKEE,

*Debtor*,

---

MICHELE LYNN MCKEE,

*Appellant*,

v.

KARL T. ANDERSON, Chapter 7
Trustee; LAURA O'KANE;
CORRINE LONG,

*Appellees*.

No. 22-60055

BAP No.
22-1042

OPINION

Appeal from the Ninth Circuit
Bankruptcy Appellate Panel
Gan, Taylor, and Spraker, Bankruptcy Judges, Presiding

Submitted December 6, 2023[*]
Pasadena, California

Filed January 17, 2024

---

[*] The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

Before:  Milan D. Smith, Jr., Kenneth K. Lee, and
Lawrence VanDyke, Circuit Judges.

Opinion by Judge Lee

## SUMMARY[**]

### Bankruptcy

The panel affirmed the Bankruptcy Appellate Panel's decision affirming the bankruptcy court's order denying chapter 7 debtor Michele McKee a homestead exemption for a Palm Springs property where she formerly lived with her partner, Laura O'Kane.

McKee claimed California's "automatic" homestead exemption, which exempts from a bankruptcy estate a property in which a debtor resides on the date of her bankruptcy petition. The panel held that McKee did not meet her burden of proving that she either physically occupied the property or intended to return to it. The panel rejected the argument that, because O'Kane's abuse made it impossible for McKee to go back to the Palm Springs property, her testimony that she desired to do so should be enough to establish homestead. The panel affirmed the bankruptcy court's finding that McKee demonstrated no indicia of intent to return, such as leaving her personal belongings at the property or retaining its address on her driver's license, and

---

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

therefore did not show entitlement to a homestead exemption.

---

## COUNSEL

Summer Shaw (argued), Shaw & Hanover PC, Palm Desert, California, for Appellant.

W. Derek May (argued), Law Office of W. Derek May, Upland, California; Leonard M. Shulman and Melissa D. Lowe, Shulman Bastian Friedman & Bui LLP, Irvine, California; for Appellees.

---

## OPINION

LEE, Circuit Judge:

Breaking up is hard to do—and a messy break-up led to this bankruptcy dispute.

Michele McKee bought a house in Palm Springs with her long-time partner, Laura O'Kane. But their rocky relationship reached a tumultuous end after over a decade together. McKee left their home and soldiered on with her life. Her financial situation, however, turned for the worse, leading to bankruptcy. She now argues that she should be entitled to California's homestead exemption, which partially shields the debtor's home from creditors. She claims that she always intended to move back into the Palm Springs home, and did not do so only because O'Kane still lived there.

But the overwhelming objective evidence suggests that McKee did not intend to return to the Palm Springs home. McKee responds that it was "impossible" to live there because O'Kane was emotionally abusive. But California does not recognize an "impossibility" carve-out to the homestead exemption rule. And thus because McKee no longer lived at and did not intend to return to the home, we affirm the Bankruptcy Appellate Panel's decision to deny her the homestead exemption.

## Factual and Procedural Background

Michele McKee met Laura O'Kane in late 2003 and they started dating. They began living together in San Francisco. Several years later, the two, along with O'Kane's mother, bought a lot in Palm Springs to build their new home.

But as they were building their new home in Palm Springs, their oft-troubled relationship began to crumble. McKee testified that O'Kane inflicted "years of repeated and extreme verbal abuse" on her. And after only about a year at their new Palm Springs home, McKee broke up with O'Kane around September 2016.

McKee testified that she intended to keep living at the Palm Springs home until it could be sold, but their relationship had become so frayed by December 2016 that McKee felt she had to leave. In October 2017, McKee and O'Kane signed a settlement agreement that contemplated the eventual buyout of McKee's interest in the property. Under that agreement, McKee would, among other things, remove her personal effects and return her garage door opener and keys. O'Kane, in turn, would take responsibility for the payment of all property taxes, mortgage payments, and insurance premiums due on the house after April 2017.

McKee moved on.  She rented a condominium and listed that address on both her driver's license and voter registration.  But her finances deteriorated, and she filed for chapter 7 bankruptcy in February 2021.  In her bankruptcy petition, McKee claimed a $488,250 homestead exemption over the Palm Springs property, which had not yet been sold. O'Kane, her mother, and Karl T. Anderson—the chapter 7 trustee in McKee's bankruptcy proceeding—objected because McKee did not reside there at the time.

The bankruptcy court sustained those objections. McKee appealed the bankruptcy court's order to the Bankruptcy Appellate Panel (BAP), which affirmed.  McKee next appealed to this court.  We have jurisdiction under 28 U.S.C. § 158(d).

## Discussion

The filing of a chapter 7 petition creates a bankruptcy estate, which generally consists of all the debtor's non-exempt property.  11 U.S.C. §§ 541(a), 522.  California has opted out of the federal bankruptcy exemption scheme, so its debtors claim exemptions under state law.  Cal. Civ. Proc. Code § 703.130.  "[F]ederal courts decide the merits of state exemptions" in bankruptcy actions, "but the validity of the claimed state exemption is controlled by the applicable state law."  *In re LaFortune*, 652 F.2d 842, 846 (9th Cir. 1981). We review a bankruptcy court's determination of the scope of a statutory exemption de novo, and its factual findings for clear error.  *In re Gilman*, 887 F.3d 956, 964 (9th Cir. 2018).

## I. California's homestead exemption partially shields debtors' homes.

McKee claims California's "automatic" homestead exemption.  *See* Cal. Civ. Proc. Code § 704.730.  That

exemption protects a debtor "who resides (or who is related to one who resides) in the homestead property at the time of a forced judicial sale of the dwelling." *In re Anderson*, 824 F.2d 754, 757 (9th Cir. 1987); *see* Cal. Civ. Proc. Code § 704.720(a). The filing of a bankruptcy petition constitutes a forced judicial sale for this exemption. *See Gilman*, 887 F.3d at 964. If the exemption applies, then the debtor's homestead cannot be sold unless the proceeds are enough to pay out all encumbrances on the property and the debtor's homestead exemption in full. Cal. Civ. Proc. Code § 704.800. So, as a practical matter, the homestead exemption can protect a debtor's substantial assets in a homestead from creditors.

Relevant here, the statute defines a "homestead" as "the principal dwelling (1) in which the judgment debtor or the judgment debtor's spouse resided on the date the judgment creditor's lien attached to the dwelling, and (2) in which the judgment debtor or the judgment debtor's spouse resided continuously thereafter until the date of the court determination that the dwelling is a homestead." Cal. Civ. Proc. Code § 704.710(c). A debtor's exemptions are "determined as of the date the bankruptcy petition is filed." Cal. Civ. Proc. Code § 703.140(c). McKee can thus only claim the homestead exemption over the Palm Springs property if she resided there on the date of her petition. She bears the burden of proof. Cal. Civ. Proc. Code § 703.580(b).

"To determine whether a debtor resides in a property for homestead purposes, courts consider the debtor's physical occupancy of the property and the intent to reside there." *Gilman*, 887 F.3d at 965 (citing *Ellsworth v. Marshall*, 196 Cal. App. 2d 471, 474 (1961)). But physical occupancy is not strictly necessary—if a debtor does not live there, she

may still claim the homestead exemption if she "intend[s] to return" to it. *Michelman v. Frye*, 238 Cal. App. 2d 698, 706 (1965). In other words, if the debtor still retains "a bona fide intention to make the place his residence, his home," *Ellsworth*, 196 Cal. App. 2d at 475, his lack of physical occupation is only a "temporary absence," *Michelman*, 238 Cal. App. 2d at 706.

## II. McKee does not qualify for a homestead exemption because she no longer lived at the home and had no intention to do so.

The parties agree that McKee did not physically occupy the Palm Springs property when she filed her bankruptcy petition. But they dispute whether she had the requisite intent to return. The bankruptcy court determined that McKee did not. The bankruptcy court acknowledged that McKee initially moved out of the home only because her relationship with O'Kane made it "impractical" for her to stay. But it also found that, by the time of her petition, McKee's primary desire was not to live in the Palm Springs home—it was to cash out her interest so that she could buy a new home. The "only evidence" supporting McKee's claim of homestead was "just her testimony" that she intended to return to the property should O'Kane ever vacate. The rest of the record suggested that "she had no intent to ever move back into the house."

McKee argues that the bankruptcy court failed to recognize that California law distinguishes between circumstances where the debtor "is not intending to return to the residence versus it being impossible to return." In essence, McKee claims that because O'Kane's abuse made it impossible for her to return to the Palm Springs property,

her testimony that she desired to do so should be enough to establish homestead.

McKee hooks her argument onto two California cases—*Moss* and *Michelman*—but neither provides much support for her position. In *Moss*, the Warner family in mid-19th century California fled their homestead "on account of the hostility of the Indians of the vicinity." 10 Cal. 296, 297 (1858). Mrs. Warner and her children spent the next three and a half years with "different families of her acquaintance in San Diego," as "during this period it was unsafe for her and her children" to return home. *Id.* The California Supreme Court held that the Warners had not abandoned the homestead but were instead "merely sojourners," who were entitled to the exemption. *Id.* at 298. And in *Michelman*, her husband's domestic violence drove Mrs. Frye and her children from the home. She then demanded her husband to vacate the property—which he did, on court order, in March 1964. 238 Cal. App. 2d at 700–01. Mrs. Frye promptly returned to the property with her children. *Id.* The California court of appeal concluded that Mrs. Frye's "forced removal" from the home did not "deprive[] her of her right to declare a homestead" because she had "intended to and later did return" to the home. *Id.* at 704.

*Moss* and *Michelman* merely stand for the unremarkable proposition that a debtor *may* claim California's homestead exemption even when it is impossible for her to return home. But neither case shows that "impossibility" alone *entitles* her to the exemption, regardless of intent to return to the home. In contrast, both *Moss* and *Michelman* noted objective evidence reflecting the claimant's intent to return to the homestead. Mrs. Warner established "no permanent place of residence," and instead lived an itinerant lifestyle, drifting through San Diego. *Moss*, 10 Cal. at 297–98. Mrs. Frye

"left most of her clothing and furnishings and all of the furniture at the family home" and "at no time changed her voting address." *Michelman*, 238 Cal. App. 2d at 700. These are the same indicia that courts have looked to in other cases to determine the debtor's entitlement to homestead: for example, whether the debtor (1) left his personal belongings at the homestead, *see In re Karr*, 2006 WL 6810996, at *3 (9th Cir. BAP Oct. 2, 2006); (2) retained the homestead's address on his driver's license, *see In re Bruton*, 167 B.R. 923, 925–26 (Bankr. S.D. Cal. 1994); or (3) regularly visited the property, *see In re Pham*, 177 B.R. 914, 919 (Bankr. C.D. Cal. 1994). In short, whenever debtors claim California's automatic homestead exemption—in circumstances of "impossibility" or not—we assess "whether the debtors demonstrated, rather than merely claimed, their intent to return to their home after the absence." *Karr*, 2006 WL 6810996, at *5 (citation omitted).

Here, the bankruptcy court correctly found that McKee demonstrated none of these indicia. She changed her driver's license and her voter registration to her new rental address. She removed all of her personal effects from the home. And she sought to cash out her interest in the Palm Springs property. McKee's *post hoc* testimony that she would have returned—had O'Kane ever vacated—does not save her claim. A debtor's testimony about her own intentions may be probative. But where, as here, "other facts to which she testified were inconsistent with such intention," a court is "not bound to accept her statement that she intended to reside [at the homestead] as conclusive[.]" *Tromans v. Mahlman*, 111 Cal. 646, 647 (1896).[1]

---

[1] McKee also invokes § 704.720(d), the spousal exception to the residence requirement of the homestead exemption. Cal. Civ. Proc.

We **AFFIRM** the BAP's decision affirming the bankruptcy court's order sustaining objections to McKee's claimed homestead exemption.

---

Code § 704.720(d). McKee argues that: (1) because § 704.720(d) applies to former spouses (who are no longer married), it should also apply to her and O'Kane, even though they were never married; and (2) because legislative history suggests § 704.720(d) was in part enacted to protect domestic violence victims, we should recognize McKee's "impossibility" exception. We reject both. Neither the plain language of the statute nor the caselaw supports McKee's first argument. And McKee's second argument impermissibly requires us to extend California law—which we cannot and do not do. *See Klingebiel v. Lockheed Aircraft Corp.*, 494 F.2d 345, 346 (9th Cir. 1974) ("[T]he duty of the federal court is to ascertain and apply the existing California law, not to predict that California may change its law and then to apply the federal court's notion of what that change might or ought to be.").