**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>PHILIP JAMES METSCHAN,<br>　　　　　　Debtor. | BAP Nos. NC-24-1181-CFB<br>　　　　　　NC-24-1182-CFB<br>　　　　　　NC-24-1183-CFB<br>　　　　　(Related Appeals) |
| CHRISTINA SHAY,<br>　　　　　　Appellant,<br>v.<br>TIMOTHY W. HOFFMAN, Chapter 7<br>Trustee; MACCONAGHY & BARNIER,<br>PLC; BACHECKI, CROM & CO., LLP,<br>　　　　　　Appellees. | Bk. No. 21-30378<br><br>**MEMORANDUM**<sup>*</sup> |

Appeal from the United States Bankruptcy Court
for the Northern District of California
Hannah L. Blumenstiel, Bankruptcy Judge, Presiding

Before: CORBIT, FARIS, and BRAND, Bankruptcy Judges.

## INTRODUCTION

Appellant Christina Shay ("Shay") appeals orders awarding fees to the

chapter 7[1] trustee, the trustee's attorney, and the trustee's accountant in her

ex-husband Philip Metschan's ("Metschan") chapter 7 bankruptcy case. We

---

\* This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure.

AFFIRM the bankruptcy court's award of professional fees to the chapter 7 trustee in BAP No. NC-24-1182 and AFFIRM the bankruptcy court's award of professional fees to Bachecki, Crom & Co., LLP, the firm hired by the chapter 7 trustee as accountants for the estate ("Trustee's Accountant"), in BAP No. NC-24-1183.

However, with respect to the fees awarded to MacConaghy & Barnier PLC, the firm hired by trustee to serve as counsel for the estate ("Trustee's Attorney"), the existing findings and record are insufficient to support the fee award. Consequently, we REVERSE and REMAND BAP No. NC-24-1181 for further proceedings consistent with this Memorandum.

## FACTS[2]

### A. Dissolution and bankruptcy

Metschan and Shay were involved in a contentious marital dissolution. In connection with the dissolution, Metschan and Shay executed a Marital Settlement Agreement ("MSA"), which was entered as judgment in a California state court on April 5, 2018.[3]

After the dissolution, Metschan filed a chapter 7 bankruptcy petition. In his petition, Metschan indicated he had an annual salary of $160,380.36. The only property Metschan listed on his Schedule A was his residence in Novato, California, which he valued at $1,200,000.00. Metschan did not list an

---

[2] We exercise our discretion to take judicial notice of the docket and documents filed in the underlying bankruptcy case. *See Atwood v. Chase Manhattan Mortg. Co.* (*In re Atwood*), 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

[3] The MSA was subsequently modified several times.

ownership interest in the property where Shay and their children lived (the "Pinheiro Property").

Timothy Hoffman ("Trustee") was appointed as the chapter 7 trustee. Trustee quickly employed counsel, and after being hired, it appears that Trustee's Attorney took over almost all management of Metschan's bankruptcy case. Trustee also employed an accountant to prepare and file tax returns and to investigate claims.

On August 6, 2021, Trustee's Attorney filed a "Stipulation RE: Debtor's waiver of homestead exemption." In the stipulation, Trustee and Metschan agreed that (1) the Pinheiro Property was "worth $1.2 million" and encumbered by two deeds of trust ($550,000 and $65,000), (2) although Metschan did not reside at the Pinheiro Property and did not plan to reside there, Metschan had the right to claim a homestead exemption, and (3) Metschan was electing to waive his homestead exemption to allow Trustee to sell the Pinheiro Property and pay all claims.

Trustee's Attorney filed a motion to employ a real estate broker to value, market, and sell the Pinheiro Property. Trustee's Attorney stated that Shay wanted to purchase Metschan's interest in the Pinheiro Property and that Trustee needed a broker to determine the value of the Pinheiro Property. The bankruptcy court granted the motion.

The United States Trustee sought dismissal of Metschan's case pursuant to § 707(b)(1) and (b)(3)(B) based on Metschan's income and apparent ability to pay his creditors. The United States Trustee argued that Metschan's

schedules and statements "significantly underrepresented" Metschan's income and overrepresented his expenses, and that, based on his true income and expenses, Metschan "could pay a meaningful portion of his debts." The United States Trustee argued that, based on the totality of the circumstances, Metschan's case should be dismissed pursuant to § 707(b)(3)(B).

Both Metschan and Trustee's Attorney objected to the dismissal motion. Metschan argued that his case should not be dismissed because the sale of the estate's interest in the Pinheiro Property to Shay for approximately $140,000 would be sufficient to pay all claims against the estate. Metschan did not address the United States Trustee's allegation that his income and expenses demonstrated his ability to pay his debts and that his bankruptcy case was thus presumptively abusive. Nor did Metschan explain why, if the case was dismissed, he could not (or would not) pay his few creditors.

Trustee's Attorney's opposition also ignored the grounds identified in the United States Trustee's motion. Instead, Trustee's Attorney echoed Metschan's argument that the sale of the Pinheiro Property to Shay would produce enough money to pay all creditors in full.

In its reply, the United States Trustee noted that neither Metschan's nor Trustee Attorney's arguments were supported by the Bankruptcy Code or supported by evidence. The bankruptcy court denied the motion to dismiss.

On October 26, 2021, Trustee's Attorney filed a motion for an order authorizing the sale of Metschan's interest in the Pinheiro Property. The motion argued that Trustee had the right to sell the "entire fee" of the

4

Pinheiro Property pursuant to § 363(h) and that Shay had a right of first refusal pursuant to § 363(i). The motion stated, without explanation or evidence, that a § 363(h) sale would only net the estate $140,000, so Trustee was selling the estate's interest in the Pinheiro Property to Shay for $139,058.50. The motion was devoid of supporting evidence such as the value of the Pinheiro Property even though Trustee's Attorney hired the broker for that purpose. Nor did the sale motion attempt to resolve Shay's pending proof of claim against the estate. The bankruptcy court approved the sale.

## B.    Shay's proof of claim

In the meantime, Shay filed a late proof of claim for $93,307.00. Shay indicated the claim was a domestic support obligation and represented monies owed to her by Metschan under the MSA. Shay classified the entire amount as priority unsecured under § 507(a)(1). Shay filed an amended proof of claim on January 11, 2022, in the amount of $80,459.00. In the amended claim, Shay asserted that only $29,292.00 was child support entitled to priority treatment pursuant to § 507(a)(1). The balance of the claim consisted of $36,966.00, representing Shay's share of Metschan's Long Term Incentive Bonus ("LTI") and film bonuses, $3,857.00 for Shay's share of a class action lawsuit, $2,014.00 for major home repairs, and a $250.00 award from child services.

Trustee's Attorney objected to Shay's amended claim. Trustee's Attorney stated in bullet points that Shay's claim should be disallowed because (1) it was late filed; (2) it was unenforceable under the MSA; and

5

(3) no part of the claim was entitled to priority. However, rather than resting her objection on the lateness of the claim (which statutorily subordinated Shay's claim to all timely filed claims), Trustee's Attorney used a summary report created by Trustee's Accountant (the "Wade Report") to specifically contest each component of Shay's claim.

After a hearing, the bankruptcy court entered an order allowing a subset of Shay's claim, including part of the priority claim, disallowing a second subset, and ordering the parties to mediate a third subset.

Unfortunately, the mediation failed. At that point, Trustee had enough money to pay in full all administrative expenses, Shay's allowed priority claim, and all timely filed unsecured claims, with about $24,000 left over for either Shay or Metschan (depending on the outcome of the issues concerning Shay's claim that the bankruptcy court had reserved). In other words, no one besides Shay and Metschan had any stake in litigating the remaining portion of Shay's claim.

Accordingly, at this point, Trustee could have simply withdrawn his objection to the balance of Shay's claim and left it to Metschan to assert his own rights. Instead, Trustee's Attorney moved the bankruptcy court to abstain from adjudicating the balance of Shay's claim. Trustee's Attorney argued that the issues should be litigated in state court because the outcome of the dispute would have no impact on other parties in interest and because Trustee would no longer be party to the litigation and therefore, no further estate funds would be expended in litigation.

Shay opposed the motion. Shay argued that permissive abstention was not appropriate. Shay also stated, for the first time in her opposition, that she intended to seek approximately $25,000 in post-petition attorney's fees under a trio of California family law statutes (not reflected in her proof of claim at the time).

At a hearing on the issue of abstention, the bankruptcy court noted that both Shay's counsel and Trustee's Attorney had "been extremely unprofessional" and that the pleadings were "terrible" and full of "mudslinging and insults."

After the hearing, the bankruptcy court entered a well-reasoned order granting the motion to abstain ("Abstention Order"). In the Abstention Order, the bankruptcy court found that the parties did not dispute that the adjudication of the remaining components of Shay's claim involved the interpretation of MSA and state law. The bankruptcy court noted that it "must acknowledge [the trustee's] hypocrisy in filing the [claim] Objection and then asking the court not to rule on its entirety." Regardless, the bankruptcy court determined that Trustee's request for abstention was proper because there was "simply no benefit whatsoever to this estate and its creditors in continuing to litigate the Objection in this court."

Shay appealed the Abstention Order. The district court affirmed, and the Ninth Circuit dismissed Shay's further appeal for lack of jurisdiction.

Trustee's Attorney sought appellate attorney's fees, arguing that Shay's appeal was frivolous. The Ninth Circuit disagreed and also implied that the

briefing submitted by Trustee's Attorney was substandard, noting that Trustee's Attorney completely "fail[ed] to argue the [Ninth Circuit's] lack of jurisdiction [to hear the appeal] under 28 U.S.C. § 1334(d)" (the basis of the Circuit's dismissal).

In the bankruptcy court, Shay filed a second amended proof of claim for $127,450. Shay's amended claim asserted that $14,629.00 was entitled to priority (reflecting the bankruptcy court's previous ruling), and the claim added post-petition attorney's fees.

Shay also filed a motion for relief from the automatic stay to return to state court and litigate the rest of her claim (a complete reversal of Shay's objection to Trustee's motion to abstain, where she argued that she could not litigate her claim in state court). The bankruptcy court granted the motion without a hearing given that the requested relief was in accord with its previous direction to the parties.

On May 20, 2024, Shay and Trustee's Attorney filed a stipulation regarding Shay's claim that was approved by the court. The terms of the stipulation revealed that despite the two years of litigation, Shay's claim had not materially changed. The stipulation stated that $14,629.00 was allowed as an unsecured priority claim pursuant to § 507(a)(1)(A), that $48,902.96 was allowed as a general unsecured claim, and that Shay could pursue her claims for attorney's fees in state court.

## C.     Professional fee applications

On July 24, 2024, Trustee's Attorney submitted her first and final application for fees and expenses, seeking $81,810.00 in fees and $3,149.81 in costs. In the fee application, Trustee's Attorney repeated the facts of the case and categorized the fees as follows: (a) "general administration and investigation" − 41 hours ($20,057.50); (b) "asset disposition" – 74.2 hours ($37,830.00); (c) "district court appeal" − 30.5 hours ($16,670.00); (d) "employment compensation" – 7.7 hours ($3,877.50); and (e) "expenses" − ($3,149.81). Although the categorized fees total $78,434.50, Trustee's Attorney sought "total fees in the amount of $81,810.00." Trustee's Attorney did not explain the discrepancy.

On July 31, 2024, Trustee's Accountant filed his first and final application for fees in the amount of $23,515.50 and expenses of $39.53.

On September 13, 2024, Trustee filed his Final Report. The Final Report indicated that he had collected $140,630.99 for the estate and paid $297.22 in administrative expenses and $6,815.71 in bank service fees, leaving $133,518.06 to distribute. Trustee provided a table showing that he intended to pay $118,820.61 in professional fees, leaving only $14,697.45 to distribute to claimants (approximately 15%).

On the same day, Trustee filed his application for compensation seeking statutory fees in the amount of $10,281.55 and expenses of $24.22.

**D.     Shay's objections to the professional fee applications**

Shay objected to all three fee requests. In a lengthy objection to Trustee's Attorney's fee request, Shay accused Trustee's Attorney of fee churning and depleting a surplus estate. Shay argued that a significant portion of the fees charged by Trustee's Attorney was for performing the statutory duties of the chapter 7 trustee rather than legal work. Shay also argued that Trustee's Attorney failed to exercise reasonable business judgment in continuing to object to Shay's claims.

Shay also filed a lengthy objection to Trustee's fee application. Shay argued that Trustee "harmed the estate in violation of his duties as trustee which turned what would have been a 100% payout case to a 15% payout case more than two years later, eating up nearly the entire estate with needless administrative expenses." Shay argued that § 326(a) established a compensation cap, not an entitlement, so the court should examine the reasonableness of the fee request. Shay further alleged that Trustee unreasonably delegated his statutory duties to Trustee's Attorney and had failed properly to compare the costs and delays of litigation with the potential recovery for the unsecured creditors.

Finally, Shay objected to the fees requested by Trustee's Accountant. Shay did not object to the fees for preparing and filing the tax returns, but she argued that the remaining fees represented unnecessary work that was not reasonably likely to benefit the estate. Shay also specifically objected to the

time billed by Trustee's Accountant for attending the mediation as unnecessary.

After a hearing, the bankruptcy court issued an oral ruling approving each fee application in the full amount requested. The bankruptcy court noted that it had broad discretion in evaluating compensation under § 330 and was familiar with the record. The bankruptcy court found that Shay's objections appeared "to be based on nothing more than spite," and were "filled with personal attacks, baseless accusations, and convenient omissions of critical information."

The bankruptcy court specifically found that the Wade Report was helpful in evaluating Shay's untimely claim and that the compensation requested by Trustee's Accountant for preparing that report was reasonable and necessary. The bankruptcy court also determined that all fees related to the court-ordered mediation were necessary because the professionals were complying with a court order.

As to Trustee's fee request, the bankruptcy court described Shay's objection as essentially an argument that the chapter 7 trustee should not have objected to Shay's claim. The bankruptcy court disagreed, stating that if Trustee had not objected to Shay's claim, Trustee would have neglected his statutory and fiduciary duties. The bankruptcy court also found it was necessary to liquidate the priority component of Shay's claim to administer the estate.

As to Trustee's Attorney's fees, the bankruptcy court found that Shay's opposition was essentially a request that the bankruptcy court "micromanage and second guess" every decision. The bankruptcy court determined that § 330 did not require such micromanaging. The bankruptcy court stated it was "required to defer" to the professionals' "reasonable business judgment" and the professionals exercised their "judgment fairly [and] efficiently."

The bankruptcy court concluded that the compensation and expenses requested by each applicant were reasonable and that the services rendered were necessary to the administration of the estate. Accordingly, the bankruptcy court approved each fee application in the full amount requested. The bankruptcy court entered fee orders consistent with its oral ruling.

Shay appealed from each of the three fee orders.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

Whether the bankruptcy court abused its discretion by granting Trustee's fee application.

Whether the bankruptcy court abused its discretion by granting Trustee's Attorney's fee application.

Whether the bankruptcy court abused its discretion by granting Trustee's Accountant's fee application.

**STANDARD OF REVIEW**

We review for abuse of discretion a bankruptcy court's order awarding compensation to an estate professional under § 330. *Hopkins v. Asset Acceptance LLC (In re Salgado-Nava)*, 473 B.R. 911, 915 (9th Cir. BAP 2012). Under the abuse of discretion standard, we "affirm unless the [trial] court applied the wrong legal standard or its findings were illogical, implausible or without support in the record." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1201-02 (9th Cir. 2013) (quoting *TrafficSchool.com v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011)).

**DISCUSSION**

**A.    Chapter 7 trustee's fees**

**1.    Applicable standards and guidelines**

When a debtor files a chapter 7 case, the United States Trustee appoints a case trustee from a panel of individuals specially qualified to manage and administer the property of the estate. The Bankruptcy Code requires the trustee to "collect and reduce to money the property of the estate . . . and close such estate as expeditiously as is compatible with the best interest of parties in interest." § 704(a)(1). The trustee must also examine claims and object to those that are improper, but only "[i]f a purpose would be served . . . ." § 704(a)(5).

Section 326(a) governs trustee compensation, providing that the bankruptcy court may award "reasonable compensation under section 330 . . . for trustee's services . . . not to exceed" specified percentages of "all moneys disbursed . . . ." Section 330(a)(7) adds that "[i]n determining the

13

amount of reasonable compensation to be awarded to a trustee, the court shall treat such compensation as a commission, based on section 326." Although the § 326(a) percentage is a cap on the compensation and not an entitlement, this Panel previously determined that "absent extraordinary circumstances, bankruptcy courts should approve chapter 7, 12 and 13 trustee fees without any significant additional review." *In re Salgado-Nava*, 473 B.R. at 921.

### 2. The bankruptcy court did not abuse its discretion in granting Trustee's fee application.

On appeal, Shay generally argues that the bankruptcy court abused its discretion because Trustee failed to stop litigation when it was evident that continued litigation was no longer beneficial to the estate. Shay also argues that Trustee wasted nearly the entire solvent bankruptcy estate by delegating his work to professionals.

We share Shay's concerns about Trustee's delegation of his duties to his attorney and questionable litigation judgment. But we are bound by the holding in *Salgado-Nava*, and we cannot say that the bankruptcy court abused its discretion when it found there were no exceptional circumstances and awarded Trustee the full statutory fees requested.

### B. Compensation for professionals hired by Trustee

### 1. Applicable standards and guidelines

A trustee may employ legal and accounting professionals to represent or assist the trustee in carrying out his or her duties under the Bankruptcy Code. *See* § 327. Section 330(a)(1)(A) permits the court to award "reasonable compensation for actual, necessary services" rendered by a properly

employed professional person. Consequently, a bankruptcy court may not award compensation for: (1) unnecessary duplication of services; or (2) services that were not: (i) reasonably likely to benefit the debtor's estate; or (ii) necessary to the administration of the case. § 330(a)(4)(A)(i)-(ii).

The bankruptcy court's duty to carefully review fee applications "is not to be taken lightly, especially given the fact that every dollar expended on fees results in a dollar less for distribution to creditors of the estate." *In re Crown Oil, Inc.*, 257 B.R. 531, 538 (Bankr. D. Mont. 2000) (citation omitted); *see also In re Sann*, Case No. 14-31370, 2016 WL 7852311, at *8 (Bankr. D. Mont. Dec. 15, 2016) (explaining that the obligation to carefully review all fee requests implicates the "integrity of the bankruptcy system").

### 2. The bankruptcy court did not abuse its discretion in granting the fee application of Trustee's Accountant.

Shay argues on appeal that the bankruptcy court abused its discretion in awarding Trustee's Accountant the full amount of fees requested. We disagree.

Shay's proof of claim was premised on allegations that Metschan owed her money based on ongoing periodic payments ordered in the original and amended MSA. Attached to her proof of claim was Shay's "accounting" and supporting documentation. It was readily apparent that Shay's accounting was not performed by a professional accountant and was based on her personal interpretation of the MSA. Importantly, Shay acknowledged that the amounts she claimed depended on various factors such as an accurate

15

accounting of Metschan's base salary, his annual income, his taxable income, and application of the LTI/bonus structure to such factors.

The state court apparently foresaw potential pitfalls with the ongoing MSA payments and attempted to prevent future conflict by directing Shay and Metschan to have their accountants meet at least yearly to calculate and "true up" the MSA payments. It is undisputed that the parties did not comply with this directive. This contributed to the lack of clarity regarding the correct amount of Shay's claim.

Because Shay's claim depended on calculations involving sophisticated accounting concepts, Trustee hired an accountant to assist with the process. Trustee's Accountant was tasked with reviewing Metschan's financial records, evaluating the accuracy of Shay's proof of claim, and preparing tax returns. The record demonstrates that Trustee's Accountant provided such services and prepared the Wade Report, which included his summary and findings.

When ruling on Trustee's Accountant's fee application, the bankruptcy court specifically stated that the Wade Report was helpful in determining the amount of Shay's claim entitled to priority. The bankruptcy court impliedly found that such detailed review of financial documents was compensable by a professional because the task "require[d] special expertise beyond that expected of an ordinary trustee." *U.S. Tr. v. Boldt (In re Jenkins)*, 188 B.R. 416, 420 (9th Cir. BAP 1995), *aff'd*, 130 F.3d 1335 (9th Cir. 1997). The bankruptcy court also specifically found that the services provided by Trustee's

16

Accountant were reasonably likely to benefit the estate and were necessary to the administration of the bankruptcy case.

On appeal, Shay does not demonstrate, nor do we find, that the bankruptcy court "applied the wrong legal standard or its findings were illogical, implausible or without support in the record." *TrafficSchool.com, Inc.*, 653 F.3d at 832. Accordingly, the bankruptcy court's award of the full amount of fees requested by Trustee's Accountant was not an abuse of discretion.

**3. The bankruptcy court abused its discretion in granting Trustee's Attorney's fee application.**

**a. Were the services provided by Trustee's Attorney compensable legal services?**

Although many tasks fall within a chapter 7 trustee's duties that theoretically could be performed by a lawyer, an attorney is not entitled to professional compensation for performing a trustee's statutory duties. *Ferrette & Slater v. U.S. Tr. (In re Garcia)*, 335 B.R. 717, 725 (9th Cir. BAP 2005) (citing § 328(b)); *In re Virissimo*, 354 B.R. 284, 290 (Bankr. D. Nev. 2006). While it is often difficult to differentiate between the roles of a trustee and an attorney, the role of counsel should be to perform only those tasks that require special expertise beyond that expected of an ordinary trustee. *In re Garcia*, 335 B.R. at 725; *In re Jenkins*, 188 B.R. at 420. The chapter 7 trustee is not an ordinary lay person. Rather, a chapter 7 trustee is a "sophisticated individual," with special knowledge, "who regularly employs real estate agents, auctioneers, and accountants to carry out" the § 704 duty to "collect and reduce to money the property of the estate." *In re Craig*, 651 B.R. 612, 619 (Bankr. S.D. Ala. 2023); *see*

17

*also In re McKenna*, 93 B.R. 238, 241-42 (Bankr. E.D. Cal. 1988) (to be a trustee, the person must be competent to perform all statutory duties). For the "services of an attorney to be chargeable as a cost of administration, the attorney must exercise professional legal skill and expertise beyond the ordinary knowledge and skill of the trustee, and the attorney cannot be compensated for the performance of the fiduciary duties of the trustee-client." *In re Perkins*, 244 B.R. 835, 843 (Bankr. D. Mont. 2000) (internal quotation marks and citation omitted); *see also In re McKenna*, 93 B.R. at 241-42.

Accordingly, before a bankruptcy court awards fees to the estate's counsel, it  must first determine whether the services performed were compensable legal services, as opposed to performance of the trustee's statutory duties. *Unsecured Creditors' Comm. v. Puget Sound Plywood, Inc.*, 924 F.2d 955, 957-59 (9th Cir. 1991). If the services provided by counsel did not require legal expertise, and the estate pays both counsel's fees and the trustee's statutory fee, then the estate paid for duplicate services. The bankruptcy court is prohibited from awarding fees for duplicative services under § 330(a)(4)(A).

Based on the record before us, we question whether Trustee's Attorney met her burden of establishing that the services she performed were compensable legal services, as opposed to performance of Trustee's statutory duties. For example, we question whether Trustee's Attorney established that legal expertise was necessary to draft an exemption waiver for a homestead exemption to which Metschan was not legally entitled. *See McKee v. Anderson*

18

*(In re McKee)*, BAP No. CC-22-1042-GTS, 2022 WL 17091179, at *5 (9th Cir. BAP Nov. 18, 2022) (explaining that absent certain circumstances not applicable here, a debtor is not entitled to claim a homestead exemption in property where the debtor does not reside or demonstrates an intent to reside), *aff'd*, 90 F.4th 1244 (9th Cir. 2024). Likewise, we question whether Trustee's Attorney established that the motion to sell Metschan's interest in the Pinheiro Property required expertise beyond that required of a trustee, given that the motion did not include basic relevant evidence such as the value of the Property. *See, e.g., In re Garcia*, 335 B.R. at 727 (explaining that communications with broker, reviewing title reports, and negotiating sales of real property "are properly within the trustee's province"); *In re McKenna*, 93 B.R. at 241 (appearing in court and preparing and submitting an order on an uncontested motion to sell liquor license was within trustee's duties); *In re Virissimo*, 354 B.R. at 296 ("The presentation of a simple motion that relates to a trustee duty and that requires no complex legal analysis or argument is generally performed by a trustee without the aid of counsel."). Employment of counsel does not give counsel free rein to step into Trustee's shoes to perform and bill the estate for duties statutorily assigned to Trustee.

The burden is always upon the applicant to demonstrate an entitlement to the fees requested. *Shalaby v. Mansdorf (In re Nakhuda)*, 544 B.R. 886, 902 (9th Cir. BAP 2016). On remand, the bankruptcy court must determine from the record provided whether Trustee's Attorney sufficiently supported her claim

19

that all services billed to the estate were compensable legal services, as opposed to performance of Trustee's statutory duties.[4]

### b. Were the legal services necessary or beneficial to the administration of the estate?

If the services of the trustee's attorney are compensable, the analysis centers on whether the fees amount to "reasonable compensation for actual, necessary services." § 330(a)(1)(A). To determine the reasonableness of the requested compensation, a bankruptcy court must consider: (1) whether the legal services were authorized; (2) whether the legal services were necessary or beneficial to the administration of the estate at the time they were rendered; (3) whether the legal services were adequately documented; (4) whether the requested fees were reasonable, taking into consideration the factors set forth in § 330(a)(3); and (5) whether the professional exercised reasonable billing judgment.[5] *Leichty v. Neary (In re Strand)*, 375 F.3d 854, 860 (9th Cir. 2004) (citing *Roberts, Sheridan & Kotel, P.C. v. Bergen Brunswig Drug Co. (In re Mednet)*, 251 B.R. 103, 108 (9th Cir. BAP 2000)).

---

[4] The bankruptcy court's review may be impeded by the many time entries which were vague, imprecise, and without sufficient detail for a fair evaluation of the work done and the reasonableness and necessity for such work.

[5] Section 330(a)(3) instructs the court to consider the following factors: (A) the time spent on the services; (B) the rates charged for the services; (C) whether the services were necessary or beneficial at the time the services were rendered; (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; (E) whether the person demonstrated skill and experience in the bankruptcy field; and (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than bankruptcy cases.

To exercise reasonable billing judgment, the professional must consider the following:

> (a) Is the burden of the probable cost of legal services disproportionately large in relation to the size of the estate and maximum probable recovery?

> (b) To what extent will the estate suffer if the services are not rendered?

> (c) To what extent may the estate benefit if the services are rendered and what is the likelihood of the disputed issues being resolved successfully?

*In re Garcia*, 335 B.R. at 724 (citation omitted).

In other words, exercise of reasonable billing judgment incorporates the "actual and necessary" prong of § 330(a)(1) by requiring the professional to consider the potential for recovery and balance the effort required against the results that might be achieved. *See Puget Sound Plywood, Inc.*, 924 F.2d at 959.

There is no doubt that Shay and her attorney made the case much more difficult than it should have been. The record demonstrates that the hostility and animosity between Shay and Metschan carried over from the marital dissolution to the bankruptcy case. It is readily evident that Shay's litigation positions were aggressive and questionable. Thus, it is without reasonable dispute that Shay's obstreperous conduct contributed to the depletion of estate assets. A review of the record highlights that Trustee and Trustee's Attorney, however, rather than being voices of reason, appeared to align with the debtor and continued litigation that virtually depleted the estate even

when it was clear there was no reasonable likelihood of benefit to unsecured creditors.

We note that, looking at the information available at the time and not through the lens of hindsight, there were several times when Trustee's Attorney could have essentially put on the brakes and preserved sufficient estate funds to pay all timely filed unsecured claims. "Having an attorney perform a task does not compel a finding that the fees were necessary per se[.]" *Smith v. U.S. Tr. (In re Banghart)*, BAP No. AZ-23-1049-LCF, 2023 WL 8784707, at *7 (9th Cir. BAP Dec. 19, 2023), *aff'd* No. 24-173, 2024 WL 4589340 (9th Cir. Oct. 28, 2024). Likewise, the court's authorization to employ an attorney to work in a bankruptcy case does not give that attorney "free reign to run up a [professional fees and expenses] tab without considering the maximum probable recovery," as opposed to possible recovery. *Puget Sound Plywood*, 924 F.2d at 958; *see also Brosio v. Deutsche Bank Nat'l Tr. Co. (In re Brosio)*, 505 B.R. 903, 913 n.7 (9th Cir. BAP 2014) ("Billing judgment is mandatory."). The record in this case indicates that professional fees were incurred without due consideration to the probable recovery to the estate.

For example, Trustee's Attorney has never explained why she abandoned the objection that Shay's claim was untimely. This ground of objection had a good chance of success because Shay never denied that her claim was late. Because the claim was untimely, it was statutorily subordinated to all timely filed claims pursuant to § 726(a)(3). This subordination would have made enough funds available to pay all unsecured

22

claims in full. But although Trustee's Attorney raised the timeliness argument in the objection, she inexplicably dropped it.

Even if Shay could have convinced the bankruptcy court to ignore the tardiness of her claim, Trustee's Attorney has never explained why she objected to Shay's claim in its entirety rather than simply objecting to the portion Shay claimed as priority. Correcting the priority portion of the claim also left enough funds to pay all unsecured creditors in full. Trustee's Attorney did not demonstrate why additional "services [related to the claim objection] were 'reasonably likely' to benefit the estate at the time the services were rendered." *In re Mednet*, 251 B.R. at 108.

Thus, based on the facts known at the time, it was foreseeable that continued litigation of the claim objection would deplete the surplus estate to the detriment of the estate and its creditors. Therefore, we question whether the bankruptcy court's determination that Trustee's Attorney exercised reasonable billing judgment is supported by the facts in the record. This is because from the record before the Panel, no unsecured creditors had any possibility of benefitting from the continued claim objection litigation, the "burden of the probable cost of legal services [was] disproportionately large in relation to the . . . maximum probable recovery," the estate would not "suffer" with the discontinuation of the claim objection, and given the hostility between the parties, there was little likelihood that continued claim objection litigation would resolve the issue successfully. *In re Garcia*, 335 B.R. at 724.

Finally, once the priority portion of Shay's claim was corrected, Trustee's Attorney has never explained why she filed the abstention motion rather than simply withdrawing the balance of the claim objection. While the abstention had the worthy goal of forcing the parties to litigate the remaining issues in state court, a withdrawal of the objection would have accomplished the same goal and would not have consumed estate funds. "'When a cost benefit analysis indicates that the only parties who will likely benefit from [a service] are the trustee and his professionals,' the service is unwarranted[.]" *In re Mednet*, 251 B.R. at 108-09 (quoting *Estes & Hoyt v. Crake (In re Riverside-Linden Inv. Co.)*, 925 F.2d 320, 321 (9th Cir. 1991)).

"While a trial court need not necessarily explain its analysis in terms of elaborate mathematical calculations, for example, it must provide sufficient insight into its exercise of discretion to allow an appellate court to exercise its reviewing function." *Thomas v. Namba* (*In re Thomas)*, BAP No. CC-08-1307-HMoPa, 2009 WL 7751299, at *12 (9th Cir. BAP July 6, 2009) (cleaned up), *aff'd*, 474 F. App'x 500 (9th Cir. 2012). Here, although the bankruptcy court cited the correct law, it abused its discretion because the facts in the record are insufficient to support the determination that Trustee's Attorney was entitled to her full fee application.

Accordingly, we REVERSE and REMAND the fee award to Trustee's Attorney, BAP No. NC-24-1181.

## CONCLUSION

Based on the foregoing, the Panel AFFIRMS the bankruptcy court's award of professional fees to Trustee, BAP No. NC-24-1182. The Panel AFFIRMS the bankruptcy court's award of professional fees to Trustee's Accountant, BAP No. NC-24-1183. The Panel REVERSES the fee award to Trustee's Attorney, BAP No. NC-24-1181, and REMANDS for the bankruptcy court to determine whether the services Trustee's Attorney charged the estate were compensable legal services and to further consider whether the services related to the continued claim objection litigation were reasonable, necessary, and beneficial to the estate.